## UNITED STATES COURT OF INTERNATIONAL TRADE

DANIA INCORPORATED,

    Plaintiff,

vs.

UNITED STATES OF AMERICA; U.S. CUSTOMS & BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs & Border Protection,

    Defendants.

**Court No. 26-01319**

## <u>COMPLAINT</u>

1.    Plaintiff, Dania Incorporated ("Plaintiff"), is a U.S.-based importer of merchandise subject to the challenged duties, and acts as the Importer of Record for such imports.

2.    Beginning in February 2025, through a series of executive orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff is responsible for paying these tariffs on its imported goods.

3.    This Court, and the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"), have held that IEEPA does not authorize these tariffs. *See V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d (Ct. Int'l Tr. 2025) ("*V.O.S. Selections I*"), *aff'd V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025) ("*V.O.S. Selections II*"), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

4.     The Supreme Court heard oral argument in *V.O.S. Selections* and a companion case arising out of the U.S. District Court for the District of Columbia[1] on November 5, 2025.

5.     In a slip opinion issued on February 20, 2026, the United States Supreme Court affirmed the decision of the Federal Circuit in *V.O.S Selections II*, and ruled that "IEEPA does not authorize the President to impose tariffs."  *See Learning Resources, Inc. et al. v. Trump*, Nos. 24-1287 and 25-250, 607 U.S. _____ (Feb. 20, 2026) ("Slip Op.") at 20-21.

6.     Through this action, Plaintiff asks the Court to hold for it precisely what the Supreme Court has already held in *Learning Resources*: that the IEEPA duties imposed upon Plaintiff by Defendants, and the underlying Executive Orders that directed them, are unlawful.

7.     This separate action is necessary because, although the IEEPA duties and underlying executive orders have been held unlawful by the Supreme Court, it is uncertain whether Defendants will issue refunds to importers that have paid IEEPA duties, including Plaintiff, in the absence of their own judgment and judicial relief.

8.     This action is further necessary because this Court has stated in a recent opinion that "Customs has no authority to make any decision regarding the legality or constitutionality" of the IEEPA duties, and that while the Executive Orders that purport to authorize the IEEPA duties remain extant "there is no Customs decision of a type that can be made or protested."  *See AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Slip Op. 25-154 at 7, 2025 WL 3634261 (Ct. Int'l Tr. December 15, 2025) ("*AGS"*).

9.     Plaintiff's entries on which IEEPA duties were paid have already begun to liquidate.  This Court ruled in *AGS* that "{b}ecause Customs has no authority to make any decision regarding the legality or constitutionality of the Executive Orders at issue…liquidation

---

[1] *Learning Resources, Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).

of the entries at issue is not final under § 1514," and that where jurisdiction pursuant to 28

U.S.C. § 1581(i) has attached, "this court has authority to order reliquidation." *Id.*

10.     Accordingly, for itself, Plaintiff seeks (i) a declaration that the IEEPA duties are

unlawful as to Plaintiff; and (ii) full refund from Defendants of all IEEPA duties Plaintiff has

paid to the United States as a result of the executive orders challenged in this lawsuit, regardless

of the liquidation status of the entries in question.

## PARTIES

11.     Plaintiff Dania Incorporated is the U.S. importer of record for entries of

merchandise on which IEEPA duties were paid.

12.     Defendant United States of America received the disputed tariffs and is the

statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

13.     Defendant United States Customs and Border Protection ("CBP") is the United

States agency that is responsible for collecting duties on imported merchandise.  CBP collected

payments made by Plaintiff of IEEPA duties on its entries.

14.     Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official

capacity.

15.     Defendants are referred to collectively in this complaint as "Defendants."

## JURISDICTION

16.     The Court has subject-matter jurisdiction over this action under 28 U.S.C. §

1581(i)(1)(B), which confers on the Court exclusive jurisdiction over "any civil action

commenced against the United States, its agencies, or its officers, that arises out of any law of

the United States providing for … (B) tariffs, duties, fees, or other taxes on the importation of

merchandise for reasons other than the raising of revenue."

3

17.     The Court of International Trade ("CIT"), the Federal Circuit, and the United States Supreme Court have ruled that the CIT has exclusive jurisdiction over cases involving the constitutionality of IEEPA duties pursuant to 28 U.S.C. § 1582(i)(1)(B).  *See Learning Resources,* Slip Op. at 5, footnote 1; *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1328-29 (Fed. Cir. 2025) ("*V.O.S. Selections II*"); *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1366-67 (Ct. Int'l Tr. 2025) (*"V.O.S. Selections I"*).  The Federal Circuit stated that a claim "'arises out of' a tariff law 'for reasons other than the raising of revenue'" for purposes of 28 U.S.C. § 1581(i)(B) if the law in question "is invoked as the authority to impose a tariff for such a non-revenue raising purpose," *regardless of whether* the invoked law "does in fact confer such authority." *VOS Selections II*, 149 F.4th 1312, 1328-29.  The Supreme Court affirmed this jurisdictional finding in *Learning Resources*, ruling in *Learning Resources* that the issue is "within the exclusive jurisdiction of the CIT" on the grounds that "{w}here, as here, such modifications{to the HTSUS} are made under an 'Act{} affecting import treatment,' 19 U.S.C. § 2483, they are 'considered to be statutory provisions of law for all purposes,'" and therefore "the plaintiffs' challenges 'arise{} out of {a} law of the United States providing for…tariffs.'" *Learning Resources*, 607 U.S. ___, Slip Op. _____ at 5, footnote 1.  The Supreme Court expressly cited 28 U.S.C. § 1582(i)(1) as the statutory basis for the CIT's jurisdiction.  *Id*.

18.     Jurisdiction is available under 28 U.S.C. § 1581(i) because it is not available under 28 U.S.C. § 1581(a), or alternatively because the remedy of protest would be "manifestly inadequate." *See Thomson Consumer Electronics, Inc. v. United States*, 247 F.3d 1210, 1214 (Fed. Cir. 2001) ("It is well-established that this residual jurisdictional provision {under § 1581(i)} is only available when no other provision of 28 U.S.C. § 1581 is available or when the remedy under any other subsection would be manifestly inadequate.").

19.     The CIT has jurisdiction under 28 U.S.C. § 1581(a) over any civil action "commenced to contest the denial of a protest."  *See* 28 U.S.C. § 1581(a).  This jurisdiction only extends to appeals from "valid" protests, however.  *See Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States,* 578 F. Supp. 3d 1333, 1344 (Ct. Int'l Tr. 2022) ("'The Federal Circuit has held consistently that 28 U.S.C. § 1581(a) 'provides no jurisdiction for protests outside the{} exclusive categories listed in 19 U.S.C. § 1514(a).'").  19 U.S.C. § 1514(a) provides for administrative protest of "any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation," and of "decisions of the Customs service" as to seven enumerated topics.  *See* 19 U.S.C. § 1514(a).  In order to be reviewable by the Court under 28 U.S.C. § 1581(a), a protest must fall within one of the seven enumerated categories of 19 U.S.C. § 1514(a); if it does not, it does not address a "protestable decision" and consequently does not constitute a "valid protest."  *Borusan Mannesmann*, 578 F. Supp. 3d at 1340.

20.     The courts have long held that where CBP's role in assessing or liquidating duties is "merely ministerial," actions by CBP within such ministerial role are not protestable "decisions" under 19 U.S.C. § 1514(a).  *See, e.g., Industrial Chemicals, Inc. v. United States,* 941 F.3d 1368, 1371 (Fed. Cir. 2019) ("Customs' 'merely ministerial' actions are not protestable under 19 U.S.C. § 1514."); *Gilda Industries, Inc. v. United States*, 446 F.3d 1271, (Fed. Cir. 2006); *Mitsubishi Electronics America, Inc. v. United States,* 44 F.3d 973, 977 (Fed. Cir. 1994).

21.     The Executive Orders that imposed the IEEPA duties make clear that CBP's role in their implementation is merely ministerial.  In each executive order, CBP (as the agency within the Department of Homeland Security responsible for collecting duties on imported merchandise) is expressly instructed to implement the tariffs, and provided no discretion with

regard thereto.  Executive Order 14195 instructed that "the Secretary of Homeland Security shall determine the modifications necessary to the Harmonized Tariff Schedule of the United States (HTSUS) in order to effectuate the objectives of this order consistent with law and shall make such modifications to the HTSUS through notice in the Federal Register."  *See Executive Order 14195 of February 1, 2025: Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121, 9123 (February 7, 2025) ("Executive Order 14195").  Executive Order 14257 attached an Annex that set forth the specific changes and additions to the HTSUS that CBP was required to make.  *See Executive Order 14257: Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041, 15047, 15088-15109 (April 7, 2025) ("Executive Order 14257").

22.     In *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Slip Op. 25-154 at 7, 2025 WL 3634261 (Ct. Int'l Tr. December 15, 2025) ("*AGS*"), the Court found that "{b}ecause Customs has no authority to make any decision regarding the legality or constitutionality of the Executive Orders at issue, this court has jurisdiction pursuant to 28 U.S.C. § 1581(i) rather than § 1581(a)."

23.     The Supreme Court's ruling that the IEEPA duties are unlawful does not change the ministerial nature of CBP's role with regard to entries filed prior to that ruling.  At the time that Plaintiff's entries were filed, application of IEEPA duties was in compliance with the instructions in the executive orders, and therefore involved no decision on the part of CBP; the Supreme Court's February 20, 2026 ruling does not retroactively transform that ministerial act into a protestable CBP "decision" as to "classification and rate and amount of duties chargeable." 19 U.S.C. § 1514(a)(2).

24. Nor does the automatic liquidation of entries with IEEPA duties after the Supreme Court's decision constitute a protestable event. Where, as here, CBP acts in a ministerial role, it is constrained to act only as specifically instructed by the appropriate governmental authority. *See Gilda*, 446 F.3d at 1276 (explaining that where "Customs has no authority to overturn or disregard" an instruction, protest is not available because "Customs would have no authority to grant relief in a protest action challenging the imposition of the duty"). Although the administration has issued an executive order rescinding the IEEPA duties and directing CBP to "take all appropriate steps to end the additional *ad valorem* duties imposed under IEEPA," it has not yet issued any instructions to CBP with regard to IEEPA duties already paid on past entries. As such, CBP does not have authority to determine how the Supreme Court's decision is to be applied to past entries upon their liquidation.

25. Therefore, until the administration or the courts provide CBP with express instructions as to how entries subject to IEEPA duties are to be treated at liquidation, the automatic liquidation of entries with IEEPA duties is a mere continuation of its ministerial duties, and as such is not protestable; even if a protest were to be filed, CBP does not have the power to issue a decision, and such protest would be manifestly inadequate.

26. The Court has the same powers at law and in equity as a United States District Court. *See* 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. *See* 28 U.S.C. §§ 2643(a)(1), (c)(1).

## STANDARD OF REVIEW

27.     Pursuant to 28 U.S.C. § 2640(e), actions commenced pursuant to § 1581(i) are to be reviewed as provided in 5 U.S.C. § 706, which requires that the Court will "hold unlawful and set aside agency action, findings, and conclusions found to be … (B) contrary to constitutional right, power, privilege or immunity," or "(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(B), (C); 28 U.S.C. § 2640(e).

## STANDING

28.     28 U.S.C. § 2631(i) states that "{a}ny civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").

29.     Plaintiff, as the importer of record for entries subject to IEEPA duties, is adversely affected and aggrieved by the requirement to pay the unlawful IEEPA duties.

## TIMELINESS

30.     Pursuant to 28 U.S.C. § 2636(i), a plaintiff must commence an action that takes place pursuant to the Court's jurisdiction under 28 U.S.C. § 1581(i) "within two years after the cause of action first accrues."  The first Executive Order that resulted in the collection of IEEPA duties paid by Plaintiff was issued on February 1, 2025, and published in the Federal Register on February 7, 2025.  *See* Executive Order 14195.

31.     Plaintiff's claims accrued at the earliest on February 1, 2025, when Defendants first issued Executive Order 14195.  This action is therefore timely.

## GENERAL PLEADINGS

I.    **President Trump orders a series of tariffs, invoking IEEPA for his authority.**

A.    **"China-Fentanyl" IEEPA Tariffs: Executive Order 14195, as amended.**

32.    On February 1, 2025, President Trump issued Executive Order 14195, which imposed and additional 10% tariff on virtually all goods originating in China.  *See* Executive Order 14195, 90 Fed. Reg. 9121. Executive Order 14195 cited IEEPA as authorizing the tariffs on the basis of a purported national emergency. Specifically, Executive Order 14195 declared that the "the sustained influx of synthetic opioids" from China was a national emergency and that "{m}any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce." *Id*.  The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the PRC government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other {transnational criminal organizations}, criminals at large, and drugs." *Id*.

33.    On February 5, 2025, the President issued Executive Order 14200, Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, which amended Executive Order 14195.  *See Executive Order 14200: Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11463 (March 7, 2025) ("Executive Order 14200").

34.    On March 3, 2025, the President issued Executive Order 14228, which again amended Executive Order 14195 by increasing the IEEPA duties on imports from China to 20%. *See Executive Order 14228*: *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 11463 (March 7, 2025)

("Executive Order 14228").  Executive Order 14228 justified this increase by claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis."  *Id.*  In the months since, President Trump, invoking IEEPA, has issued additional executive orders modifying the tariffs imposed by Executive Order 14195.[2]

35.    The tariffs imposed by Executive Order 14195, as amended, are referred to herein as "China-Fentanyl IEEPA tariffs."

**B.  "Reciprocal" IEEPA Tariffs: Executive Order 14257, as amended.**

36.    On April 2, 2025, citing trade deficits with our trading partners as its own national emergency, President Trump issued Executive Order 14257.  *See* Executive Order 14257. Executive Order 14257 imposed a 10% baseline "reciprocal" tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9.  *Id.* at 15049-50 (Annex I).  These higher country-specific tariffs ranged from 11% to 50%.  *Id.*

37.    Executive Order 14257 asserts that "U.S. trading partners' economic policies ... suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits."  *Id.* at 15041.

38.    On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on products of China by 50 percentage points—from 34% to 84%.  *See Executive Order 14259: Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (April 14, 2025) ("Executive Order 14259").

---

[2] *See, e.g., Executive Order 14357: Modifying Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 50725 (Nov. 7, 2025).

39.    On April 9, 2025, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%. *See Executive Order 14266: Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 9, 2025). Meanwhile, the 20% China-Fentanyl IEEPA tariff remained in place, such that most imports from China faced a minimum 145% IEEPA tariff. In the months since, the President has issued additional executive orders modifying the tariffs imposed by Executive Order 14257.[3]

40.    The tariffs imposed by Executive Order 14257, as amended, are referred to herein as "Reciprocal IEEPA tariffs."

41.    On April 14, 2025, several companies filed an action in this Court challenging the legality of IEEPA duties including the China-Fentanyl IEEPA tariffs and the Reciprocal IEEPA tariffs. *See V.O.S. Selections, et al. v. Donald J. Trump, et al.*, No. 25- 00066, ECF. No. 2 (Apr. 14, 2025). As discussed below, this Court and the Federal Circuit held the orders were unlawful, and the Supreme Court affirmed on February 20, 2026.

**C. Other Challenged IEEPA Tariff Orders**

42.    In the months since the *V.O.S. Selections* complaint was filed, President Trump, invoking IEEPA, has issued additional executive orders imposing additional tariffs and modifying others. On July 30, 2025, the President invoked IEEPA to impose additional tariffs on

---

[3] *See, e.g., Executive Order 14298: Modifying Reciprocal Tariff Rates to Reflect Discussions With the People's Republic of China*, 90 Fed. Reg. 21831 (May 21, 2025); *Executive Order 14316: Extending the Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30823 (July 10, 2025); *Executive Order 14326: Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37963 (Aug. 6, 2025); *Executive Order 14334: Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China*, 90 Fed. Reg. 39305 (Aug. 14, 2025); *Executive Order 14346: Modifying the Scope of Reciprocal Tariffs and Establishing Procedures for Implementing Trade and Security Agreements*, 90 Fed. Reg. 43737 (Sept. 10, 2025); *Executive Order 14358: Modifying Reciprocal Tariff Rates Consistent With the Economic and Trade Arrangement Between the United States and the People's Republic of China*, 90 Fed. Reg. 50729 (Nov. 7, 2025); *Executive Order 14360: Modifying the Scope of the Reciprocal Tariffs With Respect to Certain Agricultural Products*, 90 Fed. Reg. 54091 (Nov. 25, 2025).

imports from Brazil.  *See Executive Order 14323: Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37739 (Aug. 5, 2025) ("Brazil IEEPA tariffs"). Additionally, on August 6, 2025, the President also invoked IEEPA to impose additional tariffs on imports from India because the "Government of India is currently directly or indirectly importing Russian Federation Oil."  *See Executive Order No. 14329, Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38701 (Aug. 11, 2025) ("India IEEPA tariffs").

43.    By this complaint Plaintiff challenges those orders the Supreme Court has already held to be unlawful and includes the Brazil IEEPA tariffs and the India IEEPA tariffs issued under the identical legal grounds.

44.    Executive Order 14195, as amended, Executive Order 14295, as amended, Executive Order 14323, as amended, and Executive Order 14329, as amended, are hereafter referred to collectively as the "Challenged Tariff Orders."

**D.  CBP's implementation of the unlawful IEEPA duties**

45.    CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

46.    CBP is responsible for assessing and collecting any tariffs, including the IEEPA duties, on due upon entry of imported goods.  Tariff rates are determined principally by the classification of the goods under the Harmonized Tariff Schedule of the United States ("HTSUS"), which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202.

47.    The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. *See* 19 U.S.C. §§ 1202, 3005, 3006;

*see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

48.    Chapter 99 of the HTSUS provides for special classification provisions and requirements that apply in addition to the tariff rates provided for in Chapters 1-97 of the HTSUS.  *See* 19 U.S.C. § 1202.  Subchapter III to Chapter 99, HTSUS, provides for "Temporary Modifications Established Pursuant to Trade Legislation.  *Id.*

49.    In implementing the Challenged Tariff Orders, Defendants directed changes to the HTSUS, requiring that goods subject to the IEEPA duties to be entered under new tariff codes within Subchapter III to Chapter 99, HTSUS, in addition to all other applicable HTSUS subheadings.[4]

50.    CBP communicates to the trade community information regarding changes to the HTSUS and CBP's administration of those changes via its Cargo Systems Messaging Service ("CSMS"). CBP has effectuated the collection of unlawful IEEPA duties, as communicated, through its CSMS guidance,[5] which is a final agency action subject to review under the APA. Each guidance marks the consummation of CBP's decision-making process because it announces the agency's implementation of the IEEPA duties.

---

[4] *See, e.g.*, *Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's February 1, 2025 Executive Order Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9431 (February 12, 2025); *Further Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's February 1 2025 Executive Order Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11426 (March 6, 2025); Executive Order 14257 at Annex III, 90 Fed. Reg at 15088-15109.

[5] *See, e.g.*, CSMS # 64299816, Update – Additional Duties on Imports from China and Hong Kong (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d52328; U.S. Customs & Border Prot., CSMS # 64680374, Guidance – Reciprocal Tariffs, April 5 and April 9, 2025, Effective Dates (Apr. 8, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3daf1b6.

**E. Liquidation**

51.     "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

52.     Typically, when goods are entered into the United States, the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484.

53.     Unless liquidation of an entry is extended or suspended, liquidation – that is, finalization of the duties paid at entry – must occur within one year from the date of entry. *See* 19 U.S.C. § 1504.

54.     CBP may inspect or review an entry to confirm the final value, classification, duty rate, and final amount of duties prior to such liquidation.  In most cases, however, liquidation is scheduled by CBP's systems to occur automatically, without inspection or review.

55.     For "formal" entries with an entered value over $2,500, automatic liquidation typically occurs at least 314 days and not more than 1 year after the date of entry of the goods. Notice of liquidation for formal entries is posted on CBP's website at

https://trade.cbp.dhs.gov/ace/liquidation/LBNotice/.

56.     For "informal" entries with an entered value of $2,500 or less, automatic liquidation typically occurs within one month after entry.

57.     "Decisions" of CBP enumerated in 19 U.S.C. § 1514(a), as well as clerical errors, mistakes of fact, or other inadvertence, become final 180 days after liquidation unless an administrative protest is filed.   *See* 19 U.S.C. § 1514(a).

58.     This Court has recently ruled that the imposition of tariffs under the authority of IEEPA does not present a protestable "Customs decision" while the Executive Orders imposing

IEEPA duties remain extant, and that therefore "no § 1514 finality of liquidation occurs."  *See AGS*, Slip Op. 25-154 at 7.

59.    In *AGS*, this Court took notice of the Government's assertions in that case and related cases that "it will not object to the court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful."  *AGS,* Slip Op. 25-154 at 3. This Court ruled that "Judicial estoppel would prevent the Government from taking an inconsistent approach" at a later date.  *Id*. at 5.  The Court further noted its unanimous agreement in *In Re Section 301 Cases* that the court has "the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties." *Id.* at 6 (citing *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1363 (Ct. Int'l Tr. 2021)).  On this basis, the Court held where its jurisdiction under 28 U.S.C. § 1581(i) has attached, the Court has the authority to reliquidate liquidated entries and order refunds of IEEPA duties in the event that the IEEPA duties are ultimately found to be unlawful by the Supreme Court.

## II.    IEEPA does not authorize tariffs.

60.    The Challenged Tariff Orders cite IEEPA, 50 U.S.C. § 1701 et seq., the National Emergencies Act, 50 U.S.C. § 1601 et seq., section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

61.    None of these statutes authorizes the President to impose tariffs. Of these, it is IEEPA alone that the Defendants rely on to impose and collect the IEEPA duties.  As the Supreme Court has held, IEEPA does not authorize what the Challenged Tariff Orders seek to impose. *See Learning Resources*, Slip Op. at 20.

62.    IEEPA grants the President certain powers, but they "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has

been declared for purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

63.     Those powers include the ability to "investigate, regulate, or prohibit" certain transactions in foreign exchange, payments through banks involving foreign countries or nationals, or imports of "currency or securities." 50 U.S.C. § 1702 (a)(1)(A).

64.     The President may also control, block, or prohibit the movement or importation of funds or property in which "any foreign country" or foreign national has "interest" in, and which is also subject to the U.S. jurisdiction. 50 U.S.C. § 1702(a)(1)(B).

65.     Finally, and only when the U.S. is engaged in "armed hostilities" or has been attacked by a foreign country, the President may "confiscate" property of such a foreign person or country that also is subject to U.S. jurisdiction. 50 U.S.C. § 1702(a)(1)(C).

66.     The text of IEEPA does not use the word "tariff" or any term of equivalent meaning.

67.     IEEPA was first enacted in 1977 and has been amended several times, but it has never been amended to authorize, or used by any other President to impose, tariffs.


**A.  The U.S. Constitution vests in Congress—not the President—the power to impose tariffs.**

68.     The United States Constitution provides that "{a}ll legislative powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1.

69.     The United States Constitution also provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises..." U.S. CONST. art. I, § 8, cl. 3 ("Taxing Clause"), and "{t}o regulate Commerce with foreign Nations." Id., cl. 3 ("Commerce Clause").

70.     It has always been understood that tariffs fall within the Taxing and Commerce Clauses.

71.     To the extent it is ever permissible under the U.S. Constitution for Congress to delegate any part of the powers vested in it by the Constitution to the President, it must do so, at a minimum, by providing an intelligible principle to direct and cabin the President's authority. *See Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 145 S. Ct. 2482, 222 L. Ed. 2d 800 (2025). In IEEPA, Congress provided no such principle.

72.     Reading IEEPA as authorizing tariffs would be self-defeating because it would then require striking down IEEPA as unconstitutional under the nondelegation doctrine for lack of any intelligible principle.

73.     Moreover, "courts 'expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance.'" *West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (quoting *Utility Air Regulatory Group v. EPA*, 573 U. S. 302, 324 (2014)). When Congress has not clearly spoken, courts are directed to find that matters "of vast economic and political significance" are beyond the power of the President. *Biden v. Nebraska*, 600 U.S. 477, 505–06 (2023).

74.     By any objective measure, the Challenged Tariff Orders are "of vast economic and political significance." Because IEEPA does not clearly authorize the President to set tariffs—indeed, the statute does not mention the words "tariff" or "duty" and is not even housed in the same title of the U.S. Code as Congress's actual trade laws (Title 19)—the Challenged Tariff Orders cannot stand and the defendants are not authorized to implement and collect them.

**B.  The Supreme Court, the Federal Circuit, and this Court have ruled that the Challenged Tariff Orders are unlawful.**

75.    On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

76.    The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

77.    Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

78.    In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with oral argument on November 5, 2025.

79.    On February 20, 2026, the Supreme Court issued a slip opinion in the consolidated case, in which the Supreme Court affirmed the decision of the Federal Circuit in *V.O.S Selections II*, and ruled that "IEEPA does not authorize the President to impose tariffs." *See Learning Resources,* Slip Op. at 20-21.

**III.    Plaintiff paid preliminary IEEPA duties**

80.     As of the date of this complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders under IEEPA tariff codes that include 9903.01.20, 9903.01.24, 9903.01.25, 9903.01.63, 9903.01.85, 9903.02.20, 9903.02.26, 9903.02.27, 9903.02.39, 9903.02.53, 9903.02.61 and 9903.02.69, HTSUS.

81.     Plaintiff has paid IEEPA duties on a continuous basis.

82.     The entries for which Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders have already begun to liquidate.


## STATEMENT OF CLAIMS

## COUNT I

## THE CHALLENGED TARIFF ORDERS ARE ULTRA VIRES UNDER COURT PRECEDENT

83.     Paragraphs 1 through 82 are incorporated by reference.

84.     The Supreme Court, affirming the decision of this Court and the Federal Circuit, held that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods. *See Learning Resources*, Slip Op. at 20.

85.     As this Court explained in *V.O.S. Selections I*, IEEPA authorizes the President only to "investigate, regulate, or prohibit" certain foreign transactions in times of national emergency; it does not authorize the imposition of tariffs or duties on imports, and neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates. *See V.O.S. Selections I*, 772 F. Supp. 3d at 1374.

86.     The Federal Circuit affirmed that interpretation, holding that Congress did not clearly delegate to the President the authority to impose tariffs under IEEPA and that reading

IEEPA to permit such authority would raise grave constitutional concerns, including under the major questions and non-delegation doctrines. *See V.O.S. Selections II*, 149 F.4th at 1376-77.

87.    The Supreme Court affirmed the Federal Circuit, finding that "IEEPA does not authorize the President to impose tariffs." *See Learning Resources,* Slip Op. at 20-21.

88.    The Challenged Tariff Orders include Executive Orders 14195, 14257, and 14266, which were expressly ruled to be unlawful in *V.O.S. Selections I* and *II,* and *Learning Solutions*. Other Challenged Tariff Orders at issue in this case are materially identical in structure, authority claimed, and effect to those struck down in *V.O.S. Selections I* and *II,* and *Learning Solutions*. They purport to impose duties and modify the HTSUS solely under IEEPA. For the same reasons set forth in *V.O.S. Selections* and its affirmance by the Federal Circuit, the Challenged Tariff Orders exceed the President's statutory authority and are therefore unlawful, *void ab initio*, and without effect as applied to Plaintiff.

89.    Plaintiff respectfully requests that this Court apply its precedent and the binding decision of the Federal Circuit, declare the Challenged Tariff Orders unlawful as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order refund of all IEEPA duties collected from Plaintiff, with interest as provided by law.

## COUNT II

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706 (IN EXCESS OF STATUTORY AUTHORITY)

90.    Paragraphs 1 through 89 are incorporated by reference.

91.    CBP is an agency within the meaning of the APA. *See* 5 U.S.C. § 701. The APA provides that that "{a} person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *Id*. The APA authorizes judicial review of "final" agency actions. *See* 5

U.S.C. § 704. Courts must "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *See* 5 U.S.C. § 706(2).

92.    Defendants' agency actions implementing the Challenged Tariff Orders by modifying the HTSUS or otherwise implementing the Challenged Tariff Orders and collecting duties are "final" agency actions because they finally "determine" the "rights or obligations" of parties and are backed by "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

93.    These actions implementing the Challenged Tariff Orders are "in excess of statutory jurisdiction, authority, {and} limitations" because Defendants lack statutory authority to implement, collect, or otherwise demand the payment of tariffs that have not been enacted into law by Congress, have not been duly promulgated pursuant to a lawful delegation from Congress, or have not been authorized by a lawful executive order or proclamation pursuant to a lawful delegation of Congress.

94.    The agency actions modifying the HTSUS explicitly state that they are implementing the Challenged Tariff Orders and cite no other authority for these modifications.

95.    Accordingly, these actions fall within Defendants' statutory jurisdiction and authority only to the extent that the Challenged Tariff Orders are themselves lawful. But as discussed above and alleged in Count I, the Challenged Tariff Orders are *ultra vires* and unlawful because they exceed the President's authority under IEEPA. And, as alleged in Count III, to the extent IEEPA does authorize these tariffs, IEEPA is itself an unlawful delegation of legislative authority. The agency actions modifying the HTSUS or otherwise implementing the Challenged Tariff Orders are, thus, themselves unlawful.

96.     Defendants' agency actions are also "contrary to constitutional right, power, privilege or immunity," 5 U.S.C. § 706(2)(B), because, as set forth in Count IV and incorporated by reference herein, their only purported source of authorization, IEEPA, violates Article I, § 1 of the U.S. Constitution.

97.     For these reasons, this Court should declare that Defendants' agency actions are "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(C), and "contrary to constitutional right, power, privilege, or immunity," § 706(2)(B), set modifications to the HTSUS aside, and enjoin Defendants and their agents, employees, and all persons acting under their direction or control from taking any action to collect IEEPA duties.

98.     If Defendants' agency actions are not declared unlawful, set aside and enjoined, Plaintiff will suffer substantial injury, including irreparable injury.


## COUNT III

## ALTERNATIVE– THE CHALLENGED TARIFF ORDERS ARE UNCONSTITUTIONAL

99.     Paragraphs 1 through 98 are incorporated by reference.

100.    In the alternative, if the Court were to construe IEEPA as authorizing tariffs, the Challenged Tariff Orders must nevertheless be held unlawful because IEEPA in that event would constitute an impermissible delegation of legislative power from Congress to the President.

101.    Article I, § 1 and § 8 of the U.S. Constitution vests in Congress exclusively the power to "lay and collect ... Duties". U.S. CONST. art. I, § 8, cl. 1.

102.    Under separation-of-powers principles and binding precedent of the U.S. Supreme Court, Congress cannot delegate its power to the President unless, at the very least, it provides an

intelligible principle that directs and meaningfully constrains the President's exercise of that

power. IEEPA does not do that.

103.    Plaintiff therefore seeks a declaration that the Challenged Tariff Orders are

unconstitutional as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order

refund of all IEEPA duties collected from Plaintiff, with interest as provided by law.


## COUNT IV

## (DECLARATORY RELIEF, 28 U.S.C. § 2201)

104.    Paragraphs 1 through 103 are incorporated by reference.

105.    Federal courts have the power "to declare the rights and other legal relations of

any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

106.    Plaintiff's claims present an actual controversy as to the President's authority

under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect

the resulting tariffs.

107.    Plaintiff is an importer of record and has suffered injury by having been required

to pay IEEPA duties as a result of the Challenged Tariff Orders on goods it has imported into the

United States.

108.    This Court can exercise its equitable power to enter a declaratory judgment that

the Challenged Tariff Orders are unlawful for any of the above reasons, and that CBP lacks

authority to implement and collect the resulting tariffs, as to Plaintiff.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a.  declare that the President lacks authority under IEEPA to set tariffs;

b.  declare that the Challenged Tariff Orders are *ultra vires* and *void ab initio* with respect to Plaintiff;

c.  declare that, with respect to Plaintiff, CBP lacks authority to implement and collect any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

d.  with respect to Plaintiff, enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

e.  order the United States to refund to Plaintiff the IEEPA duties collected on entries for which Plaintiff is the importer of record, including entries that are finally liquidated, with interest as provided by law;

f.  award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

g.  grant such further relief as this Court deems proper.

Respectfully submitted,

/s/ Heather Jacobson
Heather Jacobson
NAKACHI ECKHARDT & JACOBSON P.C
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(206) 774-0927
hljacobson@tradelawcounsel.com

*Counsel for Plaintiff*

Dated: March 2, 2026